IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE E. LINSKY,<br><br>        Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br><br>        Defendant.<br>_____/ | No. C 07-03482 SI<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER PROCEEDINGS** |

    Plaintiff Denise E. Linsky brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision by the Commissioner of the Social Security Administration, which found that plaintiff was not disabled under the meaning of the Social Security Act and therefore not eligible for disability insurance benefits prior to August 26, 2005. Presently before the Court are the parties' cross-motions for summary judgment. Having considered the parties' papers and the administrative record, the Court DENIES plaintiff's motion for summary judgment, DENIES defendant's cross-motion for summary judgment, and REMANDS the matter for further proceedings.

**BACKGROUND**

**I.    Procedural History**

    Plaintiff originally applied for disability insurance benefits under Titles II and XVI of the Social Security Act on September 27, 2004. The Social Security Administration denied her application initially

on March 15, 2005 and upon reconsideration on June 28, 2005. Plaintiff requested a hearing and, on April 20, 2006, appeared with counsel and testified before an Administrative Law Judge ("ALJ"). In a decision dated June 29, 2006, the ALJ found that plaintiff was disabled as of August 26, 2005, but not before that date. Plaintiff requested review of the ALJ's decision by the Appeals Council, and the Appeals Council declined review on August 2, 2007. Plaintiff appealed to this Court on December 4, 2007. Both parties have filed cross-motions for summary judgment.

## II.   Factual Background

Plaintiff was born on November 22, 1950, has at least a high school education and is able to communicate in English. Plaintiff has been employed as an event planner, sales representative, office manager, office supervisor, and as a food service worker. According to plaintiff, she last engaged in substantial gainful activity on April 7, 2004, when she became disabled due to physical and mental impairments. Tr. at 47.

### A.   Psychiatric impairments

Medical records indicate that plaintiff has been evaluated for depression since 2003. Plaintiff was first seen at the San Francisco Department of Public Health on July 3, 2003 and numerous progress notes and evaluations from Maxine Health Center show her history of treatment for depression. Tr. at 107-198.

Arthur Carfagni, M.D., plaintiff's treating psychiatrist from July 2004 to February 2005, noted that plaintiff complained of depression, insomnia, impaired concentration and loss of motivation. In a letter dated March 29, 2006, Dr. Carfagni noted that claimant's psychiatric state would not have

2

impaired her capacity to perform simple, repetitive tasks, but that her condition may have deteriorated since he last saw her. Tr. at 313.

In March 2005, S. Scheidt, Psy. D., diagnosed plaintiff with major depressive disorder in partial remission, adjustment disorder, and high levels of stress. However, by June 2005, plaintiff's Global Assessment of Functioning ("GAF") score, an indicator of mental health, had improved to 60. Plaintiff had also completed her psychotherapy with Maile Kno-Wells, M.A. and Dr. Scheidt by June 2005. A treatment summary described her therapy as focused on stress management, exploration of future career development, pain management and finding balance. Tr. at 108-129.

In a later evaluation by Dr. Barbara Roth, plaintiff's treating doctor, on August 26, 2005, plaintiff's GAF score had decreased to 50. She reported increased anxiety, panic, poor concentration, insomnia, low energy and agitation. Plaintiff continued her treatment with Dr. Roth until January 2006. She continuously reported increased pressure in her chest and throat, shaking, sweating and insomnia. On March 29, 2006, Dr. Roth completed a Mental Disorder Assessment. Dr. Roth reported that plaintiff suffered from major depressive disorder that was recurrent and severe without psychotic features, as well as panic disorder. Dr. Roth noted that plaintiff's mental impairments caused functional limitations. Tr. at 312.

Plaintiff also received a consultative psychiatric evaluation in February 2005 from Dr. Ronald Johnson. Tr. at 217. Dr. Johnson noted that plaintiff showed no gross vegetative signs of depression, no evidence of psychomotor retardation and no evidence of psychotic thinking or gross distortion of reality. Dr. Johnson stated that plaintiff was moderately depressed and had moderate anxiety. He noted that plaintiff was capable of comprehending simple and even moderately complex questions and instructions and that her psychiatric disorder would not preclude functioning in those capacities. *Id*.

### B.     Physical impairments

In 2003 and early 2004, plaintiff was seen for lower back pain on several occasions at Maxine Hall Health Center by Dr. Kristen Sherman, plaintiff's treating physician at that time. She suffered from sciatica and leg pain. Plaintiff claims she has suffered from restless leg syndrome for years. Tr. at 107-198.

In June 2005, Dr. Ann Kim, plaintiff's treating physician beginning in March 2004, stated that plaintiff's impairments included chronic hip and back pain, sciatica, hip bursitis, hot flashes, wakening from leg movements, menopausal vasomotor symptoms, facial dermatitis, depression and social isolation. Dr. Kim noted that plaintiff had difficulty with prolonged sitting and standing and with activities of daily living such as carrying items weighing greater than six pounds for longer than one block. Dr. Kim further stated that plaintiff complained of chronic lower back pain with sciatic symptoms since at least 1990, when she re-injured her back while working. Tr. at 235. Plaintiff alleged that she first injured her back in the early 1980's and was in a car accident in 1987. In April 2006, Dr. Kim stated that plaintiff was able to lift a maximum of two pounds, was unable to stand for more than twenty minutes at a time, and had difficulty with any amount of reaching or grasping.

In January 2005, Dr. Calvin Pon, a consultative physician, performed a consultative orthopedic evaluation of plaintiff and diagnosed her with chronic low back pain, probably secondary to lumbar disc disease, some atrophy of her right calf, chronic bilateral hip pain, possible bursitis and degenerative arthritis. He stated that plaintiff should be able to stand and/or walk for a total of six hours during an eight hour workday and sit for a total of six hours during an eight hour workday. He also stated that plaintiff should stoop, crouch, kneel, and squat only occasionally but that plaintiff could frequently climb stairs and carry ten pounds frequently and twenty pounds occasionally.

4

### C. The ALJ's findings

The ALJ held that plaintiff was not disabled before August 26, 2005, as determined by the sequential evaluation of disability in 20 C.F.R. § 404.1520.[1] Specifically, the ALJ found that plaintiff's depression, anxiety disorder, hip bursitis, sciatica and facial dermatitis were severe beginning on August 26, 2005. However, the ALJ did not deem severe plaintiff's listed medically determinable impairments and symptoms of hypertension, restless leg syndrome and insomnia because there was no indication that they would last more than twelve months and result in more than slight functional limitation associated with basic work activities. Tr. at 22. The ALJ also held that plaintiff did not suffer from an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(d).

The ALJ further noted that prior to August 26, 2005, plaintiff had the residual functional capacity to perform the exertional demands of light work, or work which required maximum lifting of twenty pounds and frequent lifting of ten pounds. Tr. at 22. Furthermore, the ALJ found that plaintiff's psychiatric limitations resulted in a 40-50% decrease in the ability to understand, follow and carry out

---

[1]The ALJ evaluates disability cases using a five-step evaluation process established by the Social Security Administration. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); *see also* 20 C.F.R. § 404.1520. In the first two steps, the claimant must establish that he or she is (1) not performing substantial gainful work and (2) not performing substantial gainful work due to a "severe" impairment. 20 C.F.R. § 404.1520. An impairment must have lasted or be expected to last twelve months in order to be considered severe. 20 C.F.R. § 404.1509. In the third step, the claimant must establish that his or her impairment meets or medically equals a listed impairment described in the administrative regulations. 20 C.F.R. § 404.1520. If the claimant's impairment does not meet or equal one of the listed impairments, the evaluation proceeds to the fourth step, in which the claimant must establish her impairment prevents her from performing relevant work she did in the past. *Id*. In the fifth step, the Commissioner must demonstrate that the claimant is able to do other work, and that there are a significant number of jobs in the national economy that claimant can do. *Tackett*, 180 F.3d at 1099. The Commissioner may meet the burden of showing there is other work in significant numbers in the national economy that claimant can perform by relying upon "the testimony of a vocational expert." *Id.* The burden of proof is on the claimant as to the first four steps. *Id.* at 1098. The burden shifts to the Commissioner for the fifth step. *Id.*

detailed and complex instruction and a 10-20% decrease in the ability to understand, follow and carry out simple and repetitive tasks. *Id*.

The ALJ also considered plaintiff's subjective complaints and found that plaintiff's statements concerning the intensity, duration and limiting effects of these symptoms caused by her medically determinable impairments were not entirely credible prior to August 26, 2005, because they were not supported by objective evidence and medical opinions. The ALJ stated that plaintiff's ability to care for her own personal needs, perform household chores, go on vacations and discuss ideas about starting a business were inconsistent with plaintiff's disability claim that she is unable to perform her past relevant work. Thus, the ALJ determined that plaintiff was not subject to a disability as defined by the Social Security Act prior to August 26, 2005. Tr. at 28.

**STANDARD OF REVIEW**

This action comes before the Court for judicial review pursuant to 42 U.S.C. § 405(g) of the Social Security Act. The statute authorizes judicial review "after any final decision of the Commissioner of Social Security." 42 U.S.C. § 405(g). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. *Id.* The Court may conduct only a limited review of the final decision and may disturb the decision "only if it is not supported by substantial evidence or if it based on legal error." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Even if substantial evidence supports the ALJ's factual findings, the decision must be set aside if

6

improper legal standards were applied in reaching that decision. *Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002).

**DISCUSSION**

Plaintiff alleges that the Commissioner's actions, findings and conclusions were not supported by substantial evidence and were derived by misapplication of governing legal standards. The Court will address each of plaintiff's contentions in turn.

**I.    Step Two - Severity of impairment determination**

Plaintiff first argues that the ALJ erred in determining that some of plaintiff's impairments are not severe. At step two of the five step sequential evaluation, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." *See* 20 C.F.R. § 404.152(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. § 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p. An impairment must have lasted or be expected to last twelve months in order to be considered severe. *See* 20 C.F.R. § 404.1509. If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to step three.

Although the ALJ found that plaintiff's depression, anxiety disorder, hip bursitis, sciatica and facial dermatitis are severe, plaintiff contends that the ALJ erred in determining that plaintiff's restless leg syndrome, difficulty falling asleep and perimenopausal vasomotor problems are not severe because they would not be expected to last twelve months. Defendant properly argues that because the ALJ found that plaintiff had some "severe" impairments at step two and proceeded with the sequential evaluation, the question of whether the ALJ characterized any other alleged impairments as "severe" or "not severe" is of little significance, as long as the ALJ considered these impairments when assessing plaintiff's residual functional capacity ("RFC"). *See* SSR 96-8p (in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe). The Court agrees with defendant. In this case, the ALJ considered "the entire record" in determining plaintiff's RFC for light work with physical and mental task limitations. Tr. at 22-23. The ALJ considered plaintiff's severe and non-severe impairments in finding that prior to August 26, 2005, plaintiff could only perform light work with a 40-50% decrease in her ability to carry out complex tasks and 10-20% decrease in her ability to carry out simple and repetitive tasks. Therefore, whether or not the ALJ erred in finding some of plaintiff's impairments not severe is of no legal consequence and the Court need not reach this question.

**II.     Step Three - The listing of impairments**

Plaintiff contends that the ALJ failed to consider all of her impairments and relevant evidence, including non-severe impairments, in assessing whether she met the requirements of a listing. At step three, the ALJ must determine whether the claimant's impairment or combination of impairments meets

8

or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, & 404.1526.

Plaintiff argues that the ALJ committed legal error by improperly failing to weigh and address Dr. Kim's *implied opinion* that plaintiff met or equaled the 12.04 depression listing prior to August 26, 2005. Plaintiff suggests that she has offered a theory by way of Dr. Kim as to how her impairments combined met or equaled the 12.04 listing. This argument has no basis in the law and is also not supported by the facts.

It is the claimant who has the burden of proving that her impairment or combination of impairments meets or equals the listing. *See* 20 C.F.R. § 404.1520(a)(4)(iii). To meet a listed impairment, plaintiff has the burden of showing that she meets each and every element described in the listing. *See* 20 C.F.R. § 404.1525(d); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Plaintiff twice failed to meet this burden. In her original complaint and in her opposition to defendant's cross motion for summary judgment, plaintiff simply lists her impairments and refers to Dr. Kim's opinion in the hope that this Court will fill in the gaps as to how her impairments meet the listing. Plaintiff does not list the requirements of the 12.04 listing or explain how the ALJ erred. Arguing that she met this burden by way of Dr. Kim through an *implied opinion* is simply unreasonable. Plaintiff failed to articulate her argument and meet her burden.

Furthermore, the Court rejects plaintiff's argument that the ALJ's analysis was in error because he did not compare plaintiff's impairments to requirements of the listing. Not only was it her burden to undertake such a comparison and present a clear argument, but the Ninth Circuit has held that an ALJ's failure to consider equivalence is not error when the plaintiff did not offer any theory as to how her impairments combined equaled a listing impairment. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir.

9

2001); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (rejecting the claimant's argument that the ALJ was required to state why claimant failed to satisfy every different section of the listing of impairments); *see also Burch v. Barnhart*, 400 F.3d 676 at 683 (9th Cir. 2005) (explaining that an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination unless the claimant presents evidence in an effort to establish equivalence).

### III.    Development of the record

Plaintiff argues that the record is ambiguous because it contains contradictory medical evidence regarding plaintiff's ability to work prior to August 26, 2005, and that ambiguity requires the ALJ to resolve the ambiguities of the record. Plaintiff states that the ALJ failed to resolve such conflict through the use of a medical expert and improperly determined plaintiff's onset date of disability on his own. Defendant argues that the record is not ambiguous or inadequate to allow for a proper decision. Defendant contends that the use of a medical expert is discretionary and that the ALJ's decision is supported by substantial evidence because it is based on the opinion of two state agency doctors who reviewed plaintiff's record.

The ALJ must review a claimant's entire medical file and the rules regarding the various types of medical evidence in reaching a decision on a claimant's disability. For instance, because a treating physician has had a greater opportunity to know and observe the patient as an individual, the ALJ must give greater weight to the opinion of the treating physician than to the opinion of other doctors.[2] *See*

---

[2] A treating physician is one who has provided treatment to the claimant on more than one occasion; if the patient has consulted the physician solely for the purpose of conducting an exam for Social Security or other purposes, then the doctor is not a treating physician. *See* Kubitschek, Social Security Disability § 2.22 (1994); 46 Soc. Sec. Rep. Serv. 150, CCH Unemployment Ins. Rep. ¶

10

*Lester v. Chater*, 69 F.3d 1453, 1463 (9th Cir. 1995). The ALJ must not substitute his own opinion for those of physicians. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). When there is conflicting medical evidence, the ALJ is required to resolve such conflicts. *Id.*

In this case, the ALJ weighed the contradicting assessments provided by Dr. Kim, Dr. Johnson and Dr. Calvin Pon, regarding plaintiff's mental and physical impairments and the limitations these caused on plaintiff's ability to work. In dismissing the prognosis provided by Dr. Kim, the ALJ noted that Dr. Kim's opinion is not supported by objective medical evidence and is inconsistent with clinical findings and plaintiff's activities. Tr. at 25. The ALJ relied on Dr. Pon's evaluation, claiming that prior to August 26, 2005 plaintiff was able to stand and/or walk for a total of six hours during an eight hour day, sit for a total of six hours during an eight hour day and lift and carry ten pounds frequently and twenty pounds occasionally . The ALJ also noted that plaintiff's conservative treatment for her physical impairments was not indicative of a diminished functional capacity. *Id*.

While the ALJ considered the opinions of plaintiff's two other treating sources, Dr. Scheidt and Dr. Carfagni, the ALJ discarded Dr. Kim's opinion without clear and convincing evidence for doing so. Medical records from Dr. Kim showed that she treated plaintiff on numerous occasions for various complaints. Tr. at 107-198; 235-236. Contrary to the analyses of plaintiff's consultative physicians, Dr. Pon and Dr. Johnson, Dr. Kim stated that plaintiff was able to lift a maximum of two pounds, was unable to stand for more than twenty minutes at a time, and had difficulty with any amount of reaching or grasping. Instead of affording Dr. Kim's opinion the weight of a treating physician, the ALJ gave greater weight to one-time consultative evaluations from Dr. Pon and Dr. Johnson. Aside from stating that Dr. Kim's opinion is "not supported by objective evidence and it is inconsistent with clinical findings and

---

14196B.

claimant's activities," the ALJ failed to give a detailed reason for this finding as required by the Ninth Circuit. *Lester*, 69 F.3d at 1463. Even in cases where the treating physician's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion unless he provides "specific and legitimate reasons" which are supported by substantial evidence in the record. *Id.* Here, the ALJ has failed to provide such an explanation.

Furthermore, given that there is a direct conflict regarding plaintiff's ability to function prior to August 26, 2005, plaintiff argues that the ALJ must call upon a medical expert to resolve the ambiguity in the onset date of her disability. The Ninth Circuit has held that based on SSR 83-20, when medical inferences need to be made regarding the onset of disability, the ALJ must consult a medical expert before determining the onset date. *See Armstrong v. Comm'r. of Social Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998). Citing *Delorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991), the Ninth Circuit held that if the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the ALJ to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination, *Armstrong*, 160 F.3d at 590*; see also Morgan v. Sullivan*, 945 F.2d 1079 (9th Cir. 1991) (reversing in part an ALJ's determination of the onset date of mental disorders without the assistance of a medical expert).

In this case, there is no definite medical evidence indicating an onset date. Thus, the ALJ was not free to make his own inference and disregard competing sources of medical evidence. Contrary to defendant's contention that the use of a medical expert is discretionary, the Ninth Circuit has held that "should" means "must." *Delorme*, 924 F.2d at 849. The ALJ erred when he improperly discarded Dr. Kim's opinion and proceeded to make a medical inference as to the onset date of disability. Accordingly, on remand, the ALJ must review all of the available medical evidence and consult with

12

a medical expert, such as a psychiatrist, to resolve the medical conflicts and adequately establish an onset date of disability.

### IV.     Plaintiff's credibility

The ALJ held that plaintiff's allegations regarding her mental and physical abilities and severity of pain are not totally credible because they are inconsistent with clinical observations and her activities and are not supported by objective evidence. Tr. at 25. Plaintiff argues that the ALJ failed to provide clear and convincing evidence for discounting her credibility. Defendant argues that the ALJ adequately discounted plaintiff's credibility by basing his opinion on evaluations and progress notes from plaintiff's treating psychiatrist, consultative evaluations of Dr. Pon and Dr. Johnson, the fact that plaintiff was taking hypertension medication and plaintiff's involvement in daily activities, such as cooking and cleaning.

If an ALJ determines a claimant's testimony as to the extent of her impairments is unreliable, the ALJ "must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ must consider the record as a whole and may not isolate a "specific quantum" of evidence to support his conclusion. *See Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984). Furthermore, "unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Here, the ALJ did point to medical sources and other evidence in support of his finding that plaintiff was not credible. However, as previously noted, the ALJ failed to resolve the ambiguities and

conflicts in the record. The ALJ ignored a portion of the record when he disregarded Dr. Kim's opinion, which is directly relevant to plaintiff's allegations. Upon remand, once the medical conflicts are resolved, the ALJ should re-evaluate plaintiff's credibility in light of Dr. Kim's opinion and a determination of the onset date.

**CONCLUSION**

The Court finds that the ALJ's decision was not based on substantial evidence and that the ALJ erred in improperly rejecting the opinion of a treating physician. For all of the foregoing reasons, the Court DENIES plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment. The Court REMANDS the matter for further administrative proceedings with the following instructions:

(a) the Commissioner shall evaluate plaintiff's claims in a manner consistent with this opinion, and shall base the decision on substantial evidence contained in the record; and

(b) should the Commissioner choose to disregard plaintiff's claims or the opinion of plaintiff's treating physician, he must provide a clear and convincing reason supported by substantial evidence in a manner consistent with this opinion.

**IT IS SO ORDERED.**

Dated: May 20, 2007

SUSAN ILLSTON
United States District Judge

14